UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASHLEY NEWBURY,

      PLAINTIFF,

-against-

CITY OF NIAGARA FALLS
(NIAGARA FALLS POLICE DEPARTMENT),

      DEFENDANT.

---

Index No.:1:17-cv-00754

**VERIFIED AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff, ASHLEY NEWBURY, by counsel, Sanders & Sanders, complains as follows against CITY OF NIAGARA FALLS (NIAGARA FALLS POLICE DEPARTMENT):

## NATURE OF COMPLAINT

1. This is a proceeding for declarative relief and damages for violations of Plaintiff's rights under Title VII and the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the New York State Human Rights Law ("New York HRL"). Plaintiff contends Defendant retaliated against her and discriminated against her based on her sex by subjecting her to discriminatory terms and conditions of employment, including differential treatment and a hostile work environment, due to her sex and because she engaged in protected activity under the relevant statutes.

## JURISDICTION AND VENUE

2. This court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 (4), as this case asserts rights under Title VII.

3. This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

4. Venue is proper under 28 U.S.C. §1391(b).

5. Plaintiff has exhausted all administrative remedies, by filing a complaint with the Equal Employment Opportunity Commission on or about January 30, 2017. (Exh. 1 hereto), and being notified of her right to sue by notice dated June 19, 2017 (Exh. 2 hereto).

## PARTIES

6. Plaintiff Ashley Newbury has been a resident of New York State at all relevant times hereto. She is female and a member of the protected class as recognized by Title VII and the New York HRL.

7. The City of Niagara Falls operates a Police Department that has a principal location at 1925 Main Street, Niagara Falls, NY 14305 and is an employer within the meaning of Title VII, and the New York HRL.

## GENDER DISCRIMINATION

8. Plaintiff began her employment with Defendant as a police officer on or about February 1, 2016.

9. During Plaintiff's training at the police academy, she was subjected to harassment, discrimination, a hostile work environment and retaliation.

10. Plaintiff was the only female out of 14 people in her class. Although some of the instructors and students at the police academy were not employees of Defendant, Defendant had a duty to protect Plaintiff from discrimination and a hostile work environment in the policy academy.

11. When hired, Plaintiff was told she could not engage in any outside employment during probation. Male probationary police officers were permitted to engage in outside business activities without consequence.

12. Plaintiff was subjected to verbal and physical harassment including derogatory remarks about her body, physical abuse and sexual harassment.

13. Plaintiff was constantly told that she was unfit and she should quit.

14. For example, on or about February 2, 2016, Sebastian Czajka harassed Plaintiff during a punishment lunch run. Mr. Cazjka screamed at Plaintiff from behind, telling to go faster and to hurry up. Mr. Cazjka continued to harass Plaintiff as she entered the locker room.

15. On or about February 17, 2016, Deputy Bull called Plaintiff aside and asked her why she was present and that she needed to quit.

16. On the same day, when it was Plaintiff's turn to box, Officer Herbert, NTPD, told Plaintiff not to put her chest protector on even though that could result in an injury to Plaintiff. When Plaintiff decided against this and to wear the chest protector it made Officer Herbert angry.

17. Later that day, Deputy Grapes told Plaintiff that she didn't do a f***ing thing to deserve to be there.

18. After Plaintiff's rounds on February 17, 2016, she was harassed by Deputy Ganz, NCSO when she went to get water. Deputy Ganz asked, "what's wrong, hormones?"

19. The next day, Officer Herbert was angry that Plaintiff did not quit and instructed the class by telling them to get out their boxing gloves again. Because it was not a scheduled boxing day, half of the class was unprepared. This led to punishment. Plaintiff and her class were instructed to line up and practice wrist throws. Plaintiff was told that she was not performing the throws correctly which led to more punishment.

20. At some point during their assignment, Deputy Grapes instructed the class to line up and perform wrist throws on Plaintiff. Patrick Henning's throw was so forceful that it injured Plaintiff. Lieutenant Schultz then asked Plaintiff to "look deep down" at herself and "quit".

21. Plaintiff was constantly criticized and laughed at. She was also isolated during activities, which affected her ability to learn.

22. For example, on or about February 29, 2016, during an arrest processing class, none of Plaintiff's classmates would allow her to fingerprint them and nobody would use her to be fingerprinted.

23. Throughout Plaintiff's training with Defendant, she was also subjected to offensive text messages.

24. On or about March 4, 2016, some of the recruits went out after they were dismissed for the day. Plaintiff did not attend this outing but was including on a group text message that stated "good times" referring to the ones in attendance and a meme stating "f*** you" referring to Plaintiff because she was not in attendance.

25. On or about March 6, 2016, Plaintiff received another group text message from Sebastian Czajka. He sent a picture of an ironing board, iron spray starch and shoe polish. Along with these pictures, he made a direct referenced to Plaintiff stating that she looks like a "bag of a**" while in uniform.

26. Following this incident, Plaintiff complained to the class president. His advice was to keep it within the group and that he would ask Mr. Czajka to "cool it".

27. Plaintiff also received a group text with a YouTube video called "Whiskey, Weed and Women" which featured a naked female in the beginning.

28. Another text message contained a picture of a flashlight with a vagina on it after the class was told to purchase a flashlight for night shooting.

29. The harassment continued on or about March 9, 2016, Plaintiff was told that she was the "worst human being ever to live".

30. Plaintiff was also told that she was a "disgrace for wasting a valuable position" within her department.

31. On or about March 17, 2016, Plaintiff reported this harassment and discrimination to the president.

32. On or about March 31, 2016, Officer Faso called Plaintiff into the office and she was handed a set of papers to read. There were horrifying letters mostly written by Investigator Andres with his

opinion of Plaintiff's DT performances on several occasions. Plaintiff was told to sign each one and was not given any copies.

33. During this meeting, Plaintiff was also informed that there were numerous rumors going around about her and that Lieutenant Licata, NFPD was already given the "heads up" about Plaintiff. This is another example of how Plaintiff was set up for failure.

34. Plaintiff was also threatened on multiple occasions.

35. For example, on or about April 25, 2016, during a firearms class, Plaintiff was holding her gun out when she saw Deputy Grapes come from her left. Deputy Grapes asked Plaintiff where her finger was. Plaintiff's finger was on the trigger guard when it should have been on the outside of the trigger. Deputy Grapes then drew out a large pocket knife from his belt and brought it close to Plaintiff's face and said that if he ever saw her f***ing finger there again, he would cut her f***ing finger off.

36. In addition to the verbal harassment, Plaintiff was also subjected to physical harassment.

37. For example, on or about May 3, 2016, Plaintiff stayed after class for a DT review with Deputy Grapes, Deputy Bull and Officer Pappas. At one point during this review, Deputy Grapes approached Plaintiff's partner and asked Plaintiff to step aside with him. At that point, Deputy Grapes asked Plaintiff to stand slightly behind and to the right of him. He then unexpectedly grabbed Plaintiff's arm and tossed her overhead. Plaintiff landed on the ground in front of him. Deputy Grapes asked Plaintiff if she was hurt. When Plaintiff responded no, trying to shake it off, he told her to come back around him. Deputy Grapes then did the same thing a second time but more violently. This was an attempt to injure Plaintiff so that should would not be able to take her DT final on May 5, 2016.

38. Males were treated more favorably in regards to scoring on physical ability tests. Instructors often gave out scores to males that did not reflect their performance.

39. For example, on or about April 8, 2016, Plaintiff witnessed Michael Salada struggle with DIPS. He was unable to perform one DIP but Deputy Kyle Achtyl recorded him as doing 7.

40. On May 9, 2016, Plaintiff completed an obstacle course in 1:26 minutes but she observed Lieutenant Ware record her time as 1:36 for that particular run.

41. Similarly, male recruits did push-ups similar to Plaintiff and theirs were counted as satisfactory while hers were not.

42. On or about May 19, 2016, Plaintiff was called into the Chief's office. When Plaintiff attempted to shake his hand, he refused and told her "whenever someone gets called into my office it's not for a f***ing good reason so sit the f*** down". He then proceeded to tell Plaintiff that she had struggled through the academy and that he would not allow her onto the streets to get one of his "boys killed".

43. The Chief had not been given accurate information about Plaintiff's performance and he refused to let Plaintiff correct the information he had been given. Instead of reviewing her objective performance, he relied on the subjective opinions of persons who had subjected Plaintiff to the hostile work environment.

44. The Chief then contuned to yell and berate Plaintiff until he told her to "get the f*** out" of his office.

45. On or about May 26, 2016, Plaintiff's group received a text message from Lieutenant Drake telling them to be back at the academy by 2:00 pm. When Plaintiff arrived, the Chief was there and the rest of the group was told to go on break.

46. Plaintiff was then informed that she was being dismissed from the academy.  Plaintiff had succeeded in every facet of academy to date.  All that was left prior to graduation was a notebook check.

## FIRST CAUSE OF ACTION – GENDER DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e

47. Plaintiff repeats and realleges every allegation in paragraphs 1 through 46 of this Complaint with the same force and effect as though fully set forth herein.

48. At all relevant times herein, Plaintiff was a female employee with the meaning of Title VII.

49. Defendant engaged in a pattern and practice of discrimination against Plaintiff on the basis of gender in violation of Title VII by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment.

50. Defendant also subjected Plaintiff to a sexually hostile work environment.

51. Defendant also subjected Plaintiff to retaliation for having engaged in protected action.

52. As a direct result of Defendant's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

53. Defendant's conduct was outrageous, was done in a deliberate and malicious manner intended to injure Plaintiff and was done in conscious disregard to Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION –
## GENDER DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NEW YORK STATE HRL

54. Plaintiff repeats and realleges every allegation in paragraphs 1 through 46 of this Complaint with the same force and effect as though fully set forth herein.

55. At all relevant times, herein, Plaintiff was a disabled female employee within the meaning of the New York HRL.

56. Defendant engaged in a pattern and practice of discrimination against Plaintiff on the basis of gender in violation of the New York HRL by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment.

57. Defendant also subjected Plaintiff to a sexually hostile work environment.

58. Defendant also subjected Plaintiff to retaliation for having engaged in protected action.

59. As a direct result of the Defendant's acts against Plaintiff, Plaintiff has lost past and future wages and other employment benefits and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

WHEREFORE, Plaintiff requests relief as hereinafter provided:

a) Empanel a jury to hear Plaintiff's complaint;

b) Enter judgement declaring the acts and practices of Defendant to be in violation of the laws of the United States and the State of New York;

c) Issue a permanent injunction ordering Defendant to cease and desist from engaging in the illegal and unlawful acts and practices described herein;

d) Award Plaintiff the amount of wages, including fringe benefits, lost as a result of Defendant's discrimination;

e)  Award Plaintiff compensatory damages for losses resulting from Defendant's discrimination;

f)  Award Plaintiff punitive damages;

g)  Award Plaintiff the cost of this action, together with interest and reasonable attorney's fees.

Dated: Cheektowaga, New York
       December 7, 2018

                                                                                                                     _s/Harvey Sanders_____
                                                                                                                     Harvey P. Sanders, Esq.
                                                                                                                     SANDERS & SANDERS
                                                                                                                     Attorneys for Plaintiff
                                                                                                                     401 Maryvale Drive
                                                                                                                     Cheektowaga, NY 14225

## VERIFICATION

State of New York       )
County of ~~Erie~~ Niagara ) SS:

Ashley Newbury, being duly sworn, deposes and says that she is the Plaintiff herein; that she has read the foregoing Amended Verified Complaint and knows the contents thereof; that the same is true of her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, she believes the same to be true.

_Ashley J. Newbury_
Ashley Newbury

Subscribed and sworn to before me
this 13 day of September 2019

_[signature]_
Notary Public

CHRISTOPHER M WOODS
Notary Public, State of New York
Qualified in Niagara County
Reg. No. 01WO6323291
My Commission Expires April 20, 2023